[No. 48607-7. En Banc. April 21, 1983.]

ROBERT LONSDALE, ET AL, *Petitioners,* v. SUSAN C. CHESTERFIELD, *Individually,* ET AL, *Respondents.*

*Richard B. Sanders,* for petitioners.

*Matsen, Cory, Sprague & Layman,* by *Clyde R. Cory, Jr.,* for respondents.

WILLIAMS, C.J.—Petitioners, Robert Lonsdale, et al, are assignees of the vendors' interests in certain real estate contracts. They appeal the unpublished decision of the Court of Appeals, Division One, which upheld the dismissal of their class action for rescission and damages. *Lonsdale v. Chesterfield,* 31 Wn. App. 1003 (1982). We reverse and remand to the trial court.

In 1968, Chesterfield Land, Inc. (Chesterfield) platted a portion of a development known as Sansaria on land along the Oregon coast near Coos Bay, Oregon. It then sold 81 lots to various purchasers by real estate contracts. In each sales contract Chesterfield agreed to install a water system for the use of the plat. In turn, each purchaser agreed to pay a portion of the cost of installation and to use the water system.

Chesterfield subsequently sold its vendor's interest in some of these real estate contracts to members of the petitioner class who purchased them for investment purposes. The class members paid Chesterfield money and received in return an assignment of the vendor's interest together with a deed to the land corresponding to that particular real estate contract. The deed was intended to secure payment of the outstanding balance on each real estate contract.

In 1969, Jack Chesterfield, the sole owner of Chesterfield, died. Susan Chesterfield, his widow, then sold the remaining undeveloped portion of the development to Sansaria, Inc. (Sansaria), one of the respondents in this case. As part of the consideration for the sale Sansaria assumed Chesterfield's obligation to install a water system for the entire development, including that portion already sold via the

real estate contracts. Chesterfield was later dissolved and its assets distributed to Susan Chesterfield. Despite the terms of this contract, neither party installed the system. In a declaratory judgment action brought by Chesterfield against Sansaria, the Superior Court found Sansaria in default on this obligation.

In that action, the trial court found that as a result of failure of both Sansaria and Chesterfield to install the system, many of the original contract purchasers defaulted. Others defaulted for financial reasons and others continued to make the scheduled payments. Some of these purchasers brought suit in Oregon and obtained judgment against both Chesterfield and the individual investors. Thus, the vendors' interests in those contracts became worthless.

In August 1973, petitioners brought suit against Chesterfield to recover for the failure to install the water system. They also sued Sansaria claiming to be third party beneficiaries of the contract between Chesterfield and Sansaria. At the close of petitioners' case, the trial court granted respondents' motion to dismiss, holding Chesterfield's obligation to supply water did not run to petitioners and petitioners were not third party beneficiaries.

Following some procedural confusion, the nature of which is no longer material, petitioners moved to vacate and reenter judgment to allow appeal. This motion was denied on jurisdictional grounds. On appeal, the Court of Appeals reversed on the issue of vacation of judgment but proceeded to decide the case on the merits of petitioners' claim. In so doing the court held: (1) Chesterfield's obligation did run to petitioners and (2) the petitioners were third party beneficiaries of the contract between Chesterfield and Sansaria. *Lonsdale v. Chesterfield,* 19 Wn. App. 27, 573 P.2d 822 (1978).

On review, this court agreed with the Court of Appeals decision on the jurisdiction issue but reversed and remanded the issues on the merits, since respondents had not been given an opportunity to present evidence at trial. *Lonsdale v. Chesterfield,* 91 Wn.2d 189, 588 P.2d 217

(1978). On remand, the trial court reaffirmed its earlier decision. On appeal, a different panel of Division One reversed the prior holding and affirmed. We granted review to decide the following issues: (1) As a contract assignor is Chesterfield liable to the assignees/petitioners for its failure to install the water system? (2) Are petitioners third party beneficiaries of Sansaria's promise to Chesterfield to install the system? We answer both in the affirmative.

I
## Assignor's Liability to Assignees

It is well established that in every contract, "[t]here is an implied covenant of good faith and fair dealing, . . . a covenant or implied obligation by each party to cooperate with the other so that [each] may obtain the full benefit of performance." (Citations omitted.) *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966); *Cavell v. Hughes,* 29 Wn. App. 536, 539, 629 P.2d 927 (1981). Petitioners contend that this covenant of fair dealings applies with equal force to assignment contracts. Specifically, they contend that Chesterfield breached an implied warranty of noninterference arising from the assignment. Support for this contention is found in the Restatement of Contracts, which provides in pertinent part:

§ 333. Warranties of An Assignor
(1) Unless a contrary intention is manifested, *one who assigns* or purports to assign a right by assignment under seal or *for value warrants to the assignee*
(a) *that he will do nothing to defeat or impair the value of the assignment and has no knowledge of any fact which would do so;*
(b) that the right, as assigned, actually exists and is subject to no limitations or defenses good against the assignor other than those stated or apparent at the time of the assignment;
(c) that any writing evidencing the right which is delivered to the assignee or exhibited to him to induce him to accept the assignment is genuine and what it purports to be.
(2) An assignment does not of itself operate as a war-

ranty that the obligor is solvent or that he will perform his obligation.

(Italics ours.) Restatement (Second) of Contracts § 333 (1981). The comment to that section of the Restatement explains:

> Unlike an indorser of commercial paper or a collecting bank or its customer, an assignor is not liable for defaults of the obligor and does not warrant his solvency. . . . *An assignor does warrant his lack of knowledge of facts and his future abstention from conduct which would impair the value of the assigned right.*

(Citations omitted. Italics ours.) Restatement (Second) of Contracts § 333, comment *a* (1981). *See also* J. Calamari & J. Perillo, *Contracts* §§ 18–23, at 661–62 (2d ed. 1977); 3 S. Williston, *Contracts* § 445, at 316–21 (3d ed. 1960); 4 A. Corbin, *Contracts* § 904, at 622–25 (1951).

We interpret this section to mean that by the mere fact of the assignment the assignor impliedly guarantees that he will not thereafter interfere with the thing assigned or do anything to defeat or impair the value of the assignment; if he does so interfere, he renders himself liable to the assignee for any damages resulting from the interference. *See United States v. Fleming,* 69 F. Supp. 252, 261 (N.D. Iowa 1946). *See also Penowa Coal Sales Co. v. Gibbs & Co.,* 199 Md. 114, 117, 85 A.2d 464 (1951); *Parkhurst v. Dickinson,* 41 Wash. 420, 83 P. 895 (1906).

No cases have been found that consider whether the warranty is also breached by the assignor's failure to perform an obligation to a third party that impairs the value of the assignment. However, we see no good reason to distinguish between an affirmative act and a failure to act when as a practical matter the assignor can impair or defeat the assigned right by doing either. Our conclusion is directly in accord with the established principle of cooperation between contracting parties as expressed in *Miller.* In this case Chesterfield's failure to perform its obligation to the lot purchasers constituted a breach of this implied covenant of good faith.

█ In its unpublished opinion, the Court of Appeals found Chesterfield did not act so as to defeat or impair the value of the assignments:

> To the contrary, Chesterfield acted to maintain the value of the assignments by requiring Sansaria, Inc. to assume the obligation to install a water system.

Lonsdale v. Chesterfield, at 5. We reject this reasoning. When a party contracts to perform a specified obligation, he cannot escape liability for nonperformance by delegating his duty to perform; he remains secondarily liable (as a surety) for performance of the duty promised. *See Board of Regents v. Frederick & Nelson,* 90 Wn.2d 82, 84–85, 579 P.2d 346 (1978); *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.,* 147 Md. 588, 598, 128 A. 280 (1925); Restatement (Second) of Contracts § 318(3) (1981).

█ In the present case, Chesterfield's failure to perform its obligation to install the water system was a breach of its contracts with the original purchasers of the lots. Even if an assignee is not affirmatively liable for nonperformance of an assignor's duties, an assignee takes subject to defenses assertible against the assignor. *Federal Fin. Co. v. Humiston,* 66 Wn.2d 648, 404 P.2d 465 (1965); *Rodin v. O'Beirn,* 3 Wn. App. 327, 474 P.2d 903 (1970). *Accord, Norton v. First Fed. Sav.,* 128 Ariz. 176, 182, 624 P.2d 854 (1981). Thus Chesterfield's failure to fulfill its obligation made the assigned rights under the contract virtually worthless, since the purchasers could assert Chesterfield's failure to perform as a defense to an action by petitioners for payment.

The Court of Appeals further determined that petitioners assumed the risk of Chesterfield not performing its obligation because "[i]t was . . . quite apparent at the time of the assignments that should the water system not be installed, the purchasers of the land would have a defense that might be raised against the vendor." Lonsdale v. Chesterfield, at 5. We also reject this reasoning.

█ Were this reasoning accurate, no party to an executory contract would ever be allowed to recover for a breach.

In this case, we think it incorrect to assume that petitioners entered into the contracts with no expectation of recovering in the event of a breach. We think it more just to recognize that once Chesterfield received value for the assignments from petitioners, it no longer had the incentive to perform its part of the contract. Were we to hold that Chesterfield is not liable for its failure to perform, the petitioners would be denied the benefit of the bargain, a right long recognized in Washington, and Chesterfield would be unjustly enriched.

Since Chesterfield no longer exists, any recovery must be had against Susan Chesterfield as distributee of the remaining assets of that corporation. It is well settled that a creditor of a corporation can satisfy his claim against the corporation out of the assets distributed to shareholders upon dissolution. *See Wakeman v. Paulson,* 257 Or. 542, 546–47, 480 P.2d 434 (1971); *Cohen v. L. & G. Inv. Co.,* 186 Wash. 308, 310, 57 P.2d 1042 (1936); *Taylor v. Interstate Inv. Co.,* 75 Wash. 490, 496, 135 P. 240 (1913). Although the trial court made an alternative finding on damages should its opinion be reversed on appeal, this decision is possibly erroneous in that we find no distinction being made between defaults arising from Chesterfield's breach and defaults in payment caused by other circumstances. The damages issue is remanded to the trial court for resolution.

## II
### THIRD PARTY BENEFICIARIES

Whether Sansaria is liable to petitioners depends upon whether petitioners were third party beneficiaries of the contract between Sansaria and Chesterfield. This in turn depends upon whether the parties to the contract intended that Sansaria assume a direct obligation to petitioners. *Burke & Thomas, Inc. v. International Org. of Masters,* 92 Wn.2d 762, 767, 600 P.2d 1282 (1979); *American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wn.2d 258, 266, 317 P.2d 521 (1957). In *Burke & Thomas, Inc.,* this court observed:

The creation of a third–party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.

*Burke & Thomas, Inc.*, at 767. In the case of *Vikingstad v. Baggott*, 46 Wn.2d 494, 496–97, 282 P.2d 824 (1955), this court defined the intent required to create a third party beneficiary contract:

> "If the terms of the contract *necessarily require the promisor to confer a benefit upon a third person,* then the contract, and hence the parties thereto, *contemplate a benefit to the third person* . . . The 'intent' which is a prerequisite of the beneficiary's right to sue is 'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests, but an *intent that the promisor shall assume a direct obligation to him.*

(Some italics ours.)

In paragraph 3 of their contract, Sansaria assumed Chesterfield's obligation to construct a water system for the entire development. As noted previously, this part of the agreement was later the subject of a declaratory judgment action brought by Chesterfield wherein Sansaria was found to be in default of its obligation to install the water system. The Court of Appeals found no third party beneficiary contract:

> In his oral opinion, the trial judge succinctly stated: "[N]othing was further from the minds of the two contracting parties than intending . . . [a] benefit [to] the plaintiffs. . . ." This is fatal to plaintiffs' claim against Sansaria, Inc.

Lonsdale v. Chesterfield, at 7.

This interpretation constitutes a misreading of *Vikingstad.* In defining intent this court further stated:

> So long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded . . ., not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. *In short, the motive, purpose, or*

*desire of the parties is a quite different thing from their intention.*

(Italics ours.) *Vikingstad,* at 497.

We, unlike the trial court, may not examine the minds of the parties, searching for evidence of their motives or desires. Rather, we must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the petitioners. The fact that representatives of neither Sansaria nor Chesterfield subjectively intended to benefit the petitioners is not determinative of this issue.

Our interpretation of the meaning of intent in no way departs from the reasoning in our earlier case of *Burke & Thomas, Inc.* There, members of the public claimed standing to sue a union for breach of a collective bargaining agreement. They claimed to be third party beneficiaries of the employment agreement between the union and the public employer. We then noted: "Petitioners point to no language in the contract which indicates such an intent. Nor do they put forward any other evidence tending to show that the parties here intended any consequence other than the normal agreement to the terms and conditions of employment." *Burke & Thomas, Inc.,* at 767–68. We therefore concluded that under the facts presented, the petitioners could not be third party beneficiaries of the contract.

The petitioners in this case present quite different facts. It is not doubted that the contracting parties were motivated by something other than altruism toward the petitioners. Sansaria possibly viewed its promise to install the system merely as additional consideration for gaining ownership of the development. On the other hand, we can assume that Chesterfield only sought release from this obligation. Notwithstanding these motives, paragraph 3 of the contract necessarily required Sansaria, as the promisor, to confer a benefit upon petitioners. Under the terms of the contract, Sansaria could not fully perform its promise to install the water system without directly benefiting the petitioners as deeded owners of the lots. Petitioners were

thus intended third party beneficiaries of the performance due under the contract.

We therefore reverse the Court of Appeals and remand to the trial court for resolution consistent with this holding.

STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIM-MICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied August 9, 1983.