[No. 52094–1. En Banc. April 4, 1986.]

MABEL SEIERSTAD, ET AL, *Plaintiffs,* v. O. E. SERWOLD, ET AL, *Appellants,* THE DEPARTMENT OF REVENUE, *Respondent.*

*Perkins, Coie, Stone, Olsen & Williams,* by *Theodore J. Collins* and *Steven D. Brown,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *James R.*

*Tuttle, Assistant,* for respondent.

UTTER, J.—May the State's custodial right to a fund consisting of unclaimed property held for unlocated shareholders of a now–dissolved corporation be defeated by officers and directors who assert a claim as corporate creditors against that fund? The trial court ruled that the unclaimed property belonged in the custody of the State. We agree and affirm the trial court.

The present controversy originated with a corporate reorganization which occurred in 1971 and 1972 involving three entities: United Telecommunications, Inc. (United), United Telephone Company of the Northwest (Northwest) (a subsidiary of United) and Poulsbo Rural Telephone Association (PRTA).[1] These corporations entered into a reorganization agreement on May 28, 1971, whereby PRTA was to transfer all of its assets to Northwest in exchange for Northwest's assumption of PRTA's ordinary operating liabilities through the date of closing. Upon PRTA's transfer of these assets, United was to issue shares of its common stock at a ratio of 25 to 1 to PRTA stockholders. The agreement provided for this stock transfer to take place through an exchange agent who was to deliver United stock to each PRTA shareholder upon the shareholder's surrender of his or her PRTA shares. The agreement further provided that all issuance of United stock was to be made pursuant to a plan for final distribution and dissolution of PRTA.

The PRTA shareholders voted their approval of the reorganization agreement after receiving a proxy statement which outlined the terms of the agreement. The transaction was then closed on December 31, 1971.

In keeping with the provisions of the agreement, the PRTA officers and directors filed for dissolution on March

---

[1]Other disputes flowing from this reorganization have previously been addressed by this court: *Williams v. Poulsbo Rural Tel. Ass'n,* 87 Wn.2d 636, 555 P.2d 1173 (1976); *Williams v. Bank of Cal., N.A.,* 96 Wn.2d 860, 639 P.2d 1339 (1982).

7, 1972. However, within a 2–month "window period" between the December 31, 1971 closing and the March 7, 1972 filing of the statement of intent to dissolve, the officers and directors held a special board meeting. At this meeting, conducted on February 23, 1972, the board passed various indemnity resolutions, all purporting to indemnify the officers and directors themselves for expenses incurred in any pending or "threatened" litigation. These resolutions did not specify which, if any, corporate assets remained or were to be used for these indemnification purposes. Furthermore, no other provision for payment of these indemnities was made at any time by or on behalf of PRTA.

Between the February 23, 1972 adoption of these resolutions and the March 7, 1972 initiation of dissolution proceedings, the complaint in an underlying action was filed. The plaintiffs, who included former shareholder Mabel Seierstad and other former shareholders, sued over 20 PRTA shareholders, officers, and directors. Of these defendants, one group (referred to by the trial court as the "Group I defendants") included the PRTA officers and directors who had previously passed the indemnity resolutions. These Group I defendants are now the claimants in the present action.

The complaint filed by the former shareholders generally alleged misconduct on the part of the officers/directors. The litigation progressed for approximately 8 years—until June of 1980. After a 12–week trial, a jury rendered a verdict in favor of all the defendants and specifically found the lawsuit was brought without reasonable cause.

During the 8 years that the lawsuit was in progress, the stock transfer continued under the terms of the reorganization agreement. By July 1975, only 6,725 shares of United stock (about 4 percent of the original amount to be distributed) had yet to be transferred. United then issued these remaining shares directly to a trustee who had been appointed by the court to represent the unlocated owners of these shares of stock. The trustee was eventually able to find the owners of all but 2,850 of these shares before he

petitioned the court in 1982 to make a final distribution. In September of 1981, before the trustee's petition was entered, the claimants in this case made a demand to the trustee based on the indemnification resolutions. The claimants sought to satisfy the expenses of their 8–year litigation out of the fund consisting of the 2,850 shares of the unlocated shareholders. Following claimants' actions, the Department of Revenue appeared to assert custody over the fund as unclaimed property pursuant to former RCW 63.28.

The trial judge concluded that the property held for unlocated shareholders was unclaimed property which belonged in the custody of the State under RCW 63.28, and that no PRTA assets existed with which the claimants could satisfy their claims. The claimants appealed, assigning error to both conclusions. To address claimants' assertions requires a 2–step inquiry: (1) Is the State presumptively entitled to custody of the unclaimed property held for unlocated shareholders under former RCW 63.28? (2) Assuming the State is presumptively entitled to custody, can these claimants defeat the State's right to the fund?

I
STATE'S PRESUMPTIVE RIGHT TO CUSTODY

The unclaimed property in question consists of stock and dividends issued by United to a court appointed trustee for the benefit of unlocated shareholders. This property is all that remains after the dissolution of PRTA. Disposition of such a fund is controlled by RCW 23A.28.240. It provides, in pertinent part:

> Upon the . . . dissolution of a corporation, the portion of the assets distributable to a creditor or shareholder who is unknown or cannot be found . . . shall be . . . deposited with the state . . . and . . . shall be handled and disbursed as provided in chapter 63.28 RCW.

RCW 63.28 is the Uniform Disposition of Unclaimed Property Act. Although it was repealed and replaced in

1983 by the Uniform Unclaimed Property Act of 1983, RCW 63.29, the older act was in effect at all times material to this case. In any event, application of the new rather than the old act to this case would not cause a different result.

Both acts provide generally that the State may take custody over unclaimed property which has become presumptively abandoned property. Once such property is in custody, the State holds it subject to a properly asserted claim which may be made at any time. RCW 63.28.250.

Presumptive abandonment of the stocks and dividends which constitute the fund in this case is controlled by RCW 63.28.130. This section dictates generally that unclaimed property of this nature, when held (1) in a fiduciary capacity (2) by a business organization (3) for 7 years after the property becomes distributable, is presumed abandoned. Here, the unclaimed property has been held by a court appointed trustee in a fiduciary capacity since 1975 for shareholders of PRTA, a business organization. The stock and dividends were technically distributable as early as 1972, when United first began issuing its stock to PRTA shareholders. Thus, the State's claim, raised sometime after December 1982, was a timely and proper assertion that the fund constituted unclaimed property. Since all elements of RCW 63.28.130 are met, the State is presumptively entitled to custody of the fund for unlocated shareholders.

This court has previously upheld the State's right to custody on substantially similar facts. In *In re Monks Club, Inc.*, 64 Wn.2d 845, 394 P.2d 804 (1964), the court found that shareholders, even those who are as yet unlocated, have an absolute right to their shares upon corporate dissolution. Allowing the State to assume custody of such shareholders' property protects the owners' interests, relieves the holders of liability for the property, and gives the State use of money "that otherwise would, in effect, become a windfall to the holders thereof." *Monks Club,* at 848, quoting 9A U.L.A. 252.

## II
### Rebuttal of State's Presumptive Right to Custody

Notwithstanding the State's presumptive right to custody on these facts, "a creditor of a corporation can satisfy his claim against the corporation out of the assets distributed to shareholders upon dissolution." *Lonsdale v. Chesterfield,* 99 Wn.2d 353, 360, 662 P.2d 385 (1983); *Taylor v. Interstate Inv. Co.,* 75 Wash. 490, 135 P. 240 (1913) (property rights of a corporation pass on dissolution to its stockholders, subject to corporation liabilities). *Accord, Cohen v. L. & G. Inv. Co.,* 186 Wash. 308, 57 P.2d 1042 (1936). Based on this rule, the claimants may defeat the State's right to custody only if they can make a 2–prong showing: (1) they must establish that the stock issued by United to each PRTA shareholder initially became a corporate asset of PRTA, and (2) they must establish that they are in fact creditors with a legally cognizable claim.

The claimants contend that the shares of stock first became assets of PRTA, and that PRTA then distributed such assets. They argue that because PRTA held the stock initially, the assets, under *Lonsdale,* are subject to claims by corporate creditors. Since the claimants herein assert claims as corporate creditors, they urge they are entitled to follow these assets into the hands of shareholders. Claimants thus conclude that their right to these assets defeats the State's custodial right to the fund.

The State, on the other hand, maintains that the stock never passed to PRTA and thus never became a corporate asset subject to creditors' claims. We agree with the State.

The transaction among the three entities involved in this reorganization was essentially a sale of assets in exchange for an issuance of stock. A purchasing corporation in this type of transaction which pays for the selling corporation's assets with shares of its own stock may deliver those shares either to the selling corporation or directly to the shareholders of the selling corporation. *See generally* 8 Z. Cavitch, *Business Organizations* § 161.03, at 161–15

(1985). When such stock is transferred directly to the shareholders, the selling corporation receives no assets. Thus, in this case, if United issued stock directly to shareholders instead of to PRTA, the stock never became a corporate asset and is not subject to claims of these claimants.

The determination of whether United issued stock directly to shareholders or to PRTA may be made by reading the agreement. Section 4(f) provides for the exchange of stock. It states, in relevant part:

> *Exchange of Stock.* As promptly as practicable . . . each holder of a certificate representing shares of [PRTA] capital stock shall surrender the same to [the] . . . Exchange Agent *for all such holders,* and shall receive in exchange [certificates representing proportionate shares of United stock]. . . .

(Italics ours.) Clerk's Papers, at 19. This provision establishes the exchange agent as the agent of PRTA stockholders. As the stockholders' agent, the exchange agent's function was to deliver proportionate shares of United stock to each PRTA shareholder directly upon surrender by the latter of his or her PRTA stock certificates. PRTA was simply not a party to this exchange. Inasmuch as it was not a party to the stock transfer, it acquired no assets through the transfer. Since it obtained no assets through the stock exchange, and it had previously conveyed away all its assets to United's subsidiary pursuant to the agreement, PRTA has no assets with which these claimants may satisfy their claims.

Additional grounds for the conclusion that the stock here never became a corporate asset involve United's direct issuance to the trustee of shares for the as yet unlocated shareholders. In July of 1975, United directly issued to and delivered to the trustee 6,725 shares for these absent parties. Of those 6,725 shares, 2,850 still remain. It is those remaining shares which constitute the fund over which the State and the claimants now assert rights. Because the trustee held the fund solely for the benefit of the unlocated shareholders, and not at any time for the benefit of the

dissolved corporation, the fund never became a corporate asset.

Since PRTA acquired no assets in the stock transfer and had conveyed away its existing assets to the subsidiary of United, PRTA has no corporate assets. Because it is without assets, the rule announced in *Lonsdale v. Chesterfield, supra,* which allows creditors of a dissolved corporation to pursue corporate assets into the hands of shareholders, does not apply. In view of this result, we need not reach the question whether these claimants had achieved and maintained creditor status. We hold that where stock is issued by a purchasing corporation directly to stockholders of the selling corporation, no assets are acquired by the selling corporation which may be pursued by corporate creditors. The judgment of the trial court is affirmed.

DOLLIVER, C.J., DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.