

COURT OF APPEALS
STATE OF WASHINGTON

2013 JUL -8 AM 11: 51

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GORDON WOODLEY, | ) | NO. 68342-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| USAA CASUALTY INSURANCE | ) | |
| COMPANY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 8, 2013 |

LAU, J. — Attorney Gordon Woodley represented Tara Hanoch on a contingent fee basis in a personal injury action stemming from a three-car accident on I-5 in Seattle. Woodley received one-third of Hanoch's $110,000 settlement award as payment for his fees. Nearly six years later, Woodley sued Hanoch's insurer, USAA Casualty Insurance Company, alleging fees it owed to him for defense services he provided to Hanoch. The trial court dismissed Woodley's suit as time barred by the three-year statute of limitations governing his claims. Because Woodley failed to preserve his account receivable claim and to establish a third party contract, the trial court properly dismissed his claims on summary judgment as time barred.

## FACTS

The material facts are undisputed. On September 11, 2002, Tara Hanoch was driving southbound on I-5 when her car collided with a semitruck owned by Western

Ports Transportation Inc. The collision forced Hanoch's car into another lane where it was struck by a car driven by Herman and Laurie Carver. Hanoch and the Carvers were injured in the accident. The parties disputed liability.

USAA insured Hanoch. The day after the accident, USAA received the loss report and assigned claims representative Arlys Reynolds to the case. Reynolds met with Hanoch on September 13 to investigate the accident. Around September 25, Hanoch hired attorney Gordon Woodley on a contingent fee basis to represent her on liability and to recover damages for injuries she sustained in the accident.[1]

Reynolds' detailed case notes describe USAA's case investigation and interactions with Woodley. Reynolds' first contact with Woodley occurred on September 25, 2002, when Woodley told her he wanted USAA to hire an accident reconstruction expert. In October 2002, Reynolds told Woodley that USAA planned to obtain witness statements before it retained an accident reconstruction expert. She also told Woodley that USAA would hold Hanoch's car in case he wanted to have an accident reconstruction expert examine it. Reynolds continued her investigation. She interviewed Western Ports' truck driver and obtained several witness statements. On October 10, Reynolds informed Woodley that the truck driver blamed Hanoch for the accident. Woodley told Reynolds that Hanoch denied fault.

---

[1] No written representation agreement between Woodley and Hanoch appears in the record. In his answers to USAA's first interrogatories and requests for production, Woodley stated, in response to USAA's request for copies of all contracts for the representation of any party in the underlying lawsuit, "There is no written contract for the defense of David and Tara Hanoch." However, as discussed below, Woodley's declaration testimony establishes that Hanoch's personal injury action ultimately settled for $110,000 and Hanoch paid Woodley his attorney fees "on a one third contingent basis . . . from the settlement proceeds."

On October 18, Reynolds spoke with USAA's accident reconstruction expert John O'Callaghan. She briefed Woodley and gave him copies of all recorded witness statements. On October 22, Reynolds told the truck driver that USAA declined to accept liability for the accident. The truck driver referred the matter to his attorney. The Carvers also retained an attorney. Reynolds' case notes indicate that she discussed the case with USAA's legal department and concluded a "good possibility suit will be filed if semi co. does not step forward."

In November 2002, Reynolds obtained and reviewed the Washington State Patrol accident report. She concluded Hanoch was fault free. Reynolds also met with O'Callaghan and concluded that he "does not think anything to be gained by inspecting the [vehicles] personally . . . ." The next day, Woodley informed Reynolds that he had hired accident reconstruction expert John Hunter to examine Hanoch's car and to hold it until then. From December 2002 to March 2003, Reynolds' contacts with Woodley dealt with storage of Hanoch's car. Woodley approved the car's release after Hunter examined it. Woodley approved its release on March 27, 2003. According to Hunter, Western Ports' truck driver caused the accident.

Meanwhile, on January 13, 2003, Western Ports' insurer informed USAA that it denied fault and blamed Hanoch as the cause of the accident. In April 2003, Woodley informed Reynolds that the Carvers' attorney planned to file suit against Hanoch and Western Ports. Woodley suggested to Reynolds that he wanted to defend Hanoch for USAA. Reynolds said she would pass this on to their litigation department but USAA worked with certain law firms. USAA never hired Woodley. Reynolds understood that Woodley "was representing [Hanoch] on the liability and the damage issues against

Western Ports Transportation, Inc." Woodley informed Reynolds that he would accept service on Hanoch's behalf.

Reynolds' July 16 case notes indicate that "[Hanoch] has not been served to date. [Litigation] unit declined file until suit actually filed. [Woodley] assures me he will call immediately upon service." The Carvers filed a negligence lawsuit against Hanoch and Western Ports on September 15, 2003. Woodley accepted service of process on Hanoch's behalf, sent USAA copies of the summons and complaint, and filed a notice of appearance in the case.

On September 23, USAA assigned one of its contract attorneys, Alan Peizer, to defend Hanoch under her USAA insurance policy. Peizer and Woodley signed a "Notice of Association of Counsel" on September 25. The notice stated, "[T]he undersigned attorneys will hereby associate with the Woodley Law Offices in the defense of Tara Hanoch and 'John Doe' Hanoch." In his "Initial Case Analysis and Legal Fee Estimate," Peizer stated, "We are defending defendants Hanoch while they are also being represented by their own personal counsel for Tara Hanoch's personal injury claim." Woodley actively participated in the case as Hanoch's personal counsel.[2]

---

[2] Woodley's work on the case included bringing Peizer up to speed on the details when Peizer joined the case, drafting Hanoch's "Answer, Cross-Claim and Counterclaim," drafting answers to interrogatories, preparing the Hanochs for their depositions and defending them, preparing Hunter for his deposition, filing an arbitration brief on Hanoch's behalf, and participating in the arbitration, including examining Hunter and Hanoch and assisting in cross-examination of other witnesses at the hearing. Woodley also claims, "Western Ports attempted to introduce a damaging video [at the arbitration hearing], which I successfully defended against and had excluded from evidence."

The parties in the negligence lawsuit agreed to binding arbitration on the liability issues only. The arbitrator determined that Western Ports was 100 percent liable for the accident. The arbitrator explained in part:

> The significance of the physical evidence was the subject of dispute amongst the respective experts called by the defendants. Ms. Hanoch's expert, John Hunter, was more persuasive. Not only was the extent of his experience more compelling, his position that the physical evidence was not conclusive in and of itself, but was consistent with the truck having crossed into the Volvo was explained and made sense.

USAA paid Hanoch's arbitration costs and Hunter's witness fee.

In a December 28, 2004 letter, Peizer explained the arbitration outcome to USAA regional counsel Lisa Giertz. Peizer concluded, "We should . . . be able to conclude our involvement in this case shortly having successfully defended Hanoch, with the able assistance of Hanoch's personal counsel." On January 25, 2005, the trial court entered final judgment dismissing all claims against Hanoch. USAA's involvement in the case ended when Peizer filed a motion to withdraw on February 11, 2005. Hanoch settled her personal injury case against Western Ports for $110,000 and paid Woodley a one-third contingency fee.

On January 31, 2005, after entry of final judgment regarding liability, Woodley sent USAA an invoice for his defense services. He claimed USAA owed him total fees and costs of $53,886.19 for "Liability Only." Woodley requested USAA "to pay for these defense services which were necessary to protect [the Hanochs] and their carrier from liability and which services were instrumental in shielding them and USAA from liability

for serious damages claims."[3] Woodley claimed no work after January 31, 2005. On March 9, 2005, he sent USAA a second letter to demand payment and additional interest accrued. USAA refused to pay Woodley.

On January 7, 2011, nearly six years after he worked on Hanoch's case, Woodley sued USAA for fees he alleged USAA owed him in defending Hanoch. Woodley's amended complaint alleged four claims: an account stated, statutory violation of the duty of good faith and fair dealing,[4] unjust enrichment, and quantum meruit.

USAA moved for summary judgment, arguing that Woodley failed to state a claim upon which relief could be granted and the three year statute of limitations barred his claims. About a month later, Woodley cross moved for summary judgment, arguing for the first time that his January 2005 billing invoice to USAA created an account receivable, subject to the six-year statute of limitations under RCW 4.16.040(2). He also argued for the first time on summary judgment that he was an intended third party beneficiary of the insurance contract between Hanoch and USAA. Therefore, a six-year statute of limitations period applied to his action. The trial court considered both motions at the summary judgment hearing. It granted USAA's summary judgment motion of dismissal and denied Woodley's motion.

---

[3] Peizer's declaration testimony established that Woodley's bill came as a surprise. Peizer testified that Woodley "never discussed this or any billing of his fees with me prior to that." Peizer assumed Woodley would be paid from contingent fees received upon resolving Hanoch's personal injury suit. Reynolds similarly testified that Woodley never told her he was representing USAA or USAA's interests, and "never made any mention of charg[ing] us for any of his services."

[4] Woodley's summary judgment reply brief states, "Woodley is not bringing a bad faith action." Because he abandoned this claim below, we decline to address it.

ANALYSIS

Standard of Review

We review a summary judgment order de novo, performing the same inquiry as the trial court and considering facts and reasonable inferences in the light most favorable to the nonmoving party. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists where reasonable minds could differ regarding the facts controlling the outcome of the litigation. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The nonmoving party may not rely on mere allegations, denials, opinions, or conclusory statements but must set forth specific admissible facts indicating a genuine issue for trial. CR 56(e); Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

Account Receivable

Woodley contends that his January 2005 billing invoice to USAA demanding payment constitutes an account receivable. He asserts that RCW 4.16.040's[5] six year statute of limitations for accounts receivable applies and the trial court erred in granting summary judgment dismissal based on a three-year statute of limitations. USAA responds that Woodley cannot unilaterally create an account receivable by sending a

---

[5] RCW 4.16.040(2) provides in relevant part:
The following actions shall be commenced within six years:

. . . .

(2) An action upon an account receivable. For purposes of this section, an account receivable is any obligation for payment incurred in the ordinary course of the claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance.

bill to a company he admits never employed him and his complaint alleges no account receivable claim.

Woodley never pleaded his "account receivable" claim in his original or amended complaint. His amended complaint asserted claims for "account stated, for violation of [RCW 48.01.030], for unjust enrichment, and for quantum meruit based recovery of insurance defense legal fees and costs." (Capitalization omitted.) Specifically, his complaint alleged that the invoice he sent USAA in January 2005 was "evidence of an account stated." He argued account receivable for the first time in his cross motion for summary judgment.[6]

A civil complaint must "'apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest.'" Kirby v. City of Tacoma, 124 Wn. App. 454, 469-70, 98 P.3d 827 (2004) (quoting Molloy v. City of Bellevue, 71 Wn. App. 382, 385, 859 P.2d 613 (1993)). "While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006). Washington is a notice pleading state, meaning that a simple concise statement of the claim and the relief sought is sufficient. Pac. Nw., 158 Wn.2d at 352; CR 8(a). Pleadings are liberally construed; their purpose is to facilitate a proper decision on the merits, "not to erect formal and burdensome impediments to the litigation process." State v. Adams, 107

---

[6] Woodley submitted no opposition brief to USAA's opening summary judgment brief. Instead, he filed a "Declaration of Gordon Woodley in Opposition to USAA's Motion for Summary Judgment and in Support of Woodley's Motion for Summary Judgment." (Capitalization omitted.) His declaration mentions account receivable in only one sentence: "The only payment made by USAA on this account receivable has been to pay the cost of the accident reconstruction expert John Hunter who I retained and who testified in the case."

Wn.2d 611, 620, 732 P.2d 149 (1987). But a complaint must give sufficient notice of the claim asserted. Complaints that fail to give the opposing party fair notice of the claim asserted and the ground upon which it rests are insufficient. Pac. Nw., 158 Wn. 2d at 352; Lewis v. Bell, 45 Wn. App. 192, 197, 724 P.2d 425 (1986).

"'A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along.'" Kirby, 124 Wn. App. at 472 (quoting Dewey v. Tacoma Sch. Dist. No. 10, 95 Wn. App. 18, 26, 974 P.2d 847 (1999)). CR 15 sets forth the proper procedure to amend pleadings to add an additional claim or theory. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Because Woodley's account receivable claim was improperly pleaded for the first time in summary judgment proceedings, the trial court properly dismissed that claim.[7] See

---

[7] Washington v. Boeing Co., 105 Wn. App. 1, 14, 19 P.3d 1041 (2000) does not require a different result. The complaint there was more definitive of the precise nature of the claim. The complaint here is not. A fair reading of the complaint shows that Woodley never mentioned an account receivable claim. As discussed above, he raised it for the first time in response to USAA's time bar summary judgment motion to dismiss.

Account stated and account receivable are distinct claims. An account stated is a mutual agreement as to the correct amount due from one party to the other as a final adjustment of their mutual dealings to which the account relates. Sunnyside Valley Irrigation Dist. v. Roza Irrigation Dist., 124 Wn.2d 312, 315-16, 877 P.2d 1283 (1994). Additionally, an account stated is an admission by each party of the facts asserted and a promise by the debtor to pay the sum indicated. Sunnyside Valley, 124 Wn.2d at 315. Mere rendition of an account by one party to another does not show an account stated. Sunnyside Valley, 124 Wn.2d at 316. A three-year statute of limitations applies to an account stated. Tonkon v. Small, 143 Wash. 665, 255 P. 1033 (1927). Woodley does not dispute that his account stated claim is time barred.

In contrast, actions on accounts receivable are governed by RCW 4.16.040(2). The term "account receivable" refers to "an amount due a business on account from a customer who has bought merchandise or received services." Tingey v. Haisch, 159

Nast v. Michels, 107 Wn.2d 300, 308, 730 P.2d 54 (1986) ("[A]n appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court.").

Our review of Woodley's account receivable claim is also hampered by Woodley's failure to develop the argument or cite any case authority either below or on appeal. Woodley argues that because he sent USAA an invoice, his unjust enrichment and quantum meruit claims[8] qualify as accounts receivable subject to RCW 4.16.040(2)'s six-year statute of limitations. Citing RCW 4.16.040(2)'s definition of an account receivable as "any obligation for payment incurred in the ordinary course of

---

Wn.2d 652, 663, 152 P.3d 1020 (2007). Effective July 22, 2007, the legislature amended the statute to add the following definition of an account receivable: "any obligation for payment incurred in the ordinary course of the claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance." LAWS 2007, ch. 124, § 1. An action to enforce an account receivable is governed by a six-year statute of limitations. RCW 4.16.040(2); Tingey, 159 Wn.2d at 663. Tingey emphasized that its definition of "account receivable" was narrow:

> Our definition identifies the parties to the contract (a customer and a business) and the character of the transaction (a purchase by the customer). It requires the business to have completed performance (customer has bought or received the merchandise or services). It specifies the monetary nature of the remaining obligation (an amount due). Only oral contracts exhibiting all of these characteristics garner the account receivable six-year limitation.

Tingey, 159 Wn.2d at 659-60.

The mere fact that accounts receivable and accounts stated share some common attributes does not excuse failure to comply with pleading requirements. As separate claims, they must both be specifically alleged.

[8] The law recognizes two classes of implied contracts—contracts implied in law and contracts implied in fact. Quantum meruit is the method of recovering the reasonable value of services provided under a contract implied in fact. Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it. In this circumstance, a contract implied in law exists. Young v. Young, 164 Wn.2d 477, 483, 191 P.3d 1258 (2008) ("we take this opportunity to conceptually clarify the distinction between 'unjust enrichment" and "quantum meruit.").

-10-

the claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance," Woodley devotes three sentences to make his point:

> By using the words any obligation for payment, the Legislature abolished any need for direct contract privity. As long as an account receivable is created on any basis, the six-year limitation applies. This would include an unjust enrichment claim since USAA received the benefit of Woodley's work for which it has not paid.

Appellant's Br. at 19-20. His reply brief merely repeats this statement. See Appellant's Reply Br. at 13. The question of whether the three-year statute of limitations applicable to an implied contract can be changed to the six-year statute of limitations by sending an invoice involves a significant change in the law. To consider such a large step premised on a few sentences of unsupported argument would be fundamentally unfair to USAA and impair the orderly development of the law. We decline to address this issue. See RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider arguments unsupported by reference to the record or citation to authority).

### Third Party Beneficiary Status

Woodley argues that he is a third party beneficiary of the insurance contract between Hanoch and USAA. He claims a six-year statute of limitations applies based on USAA's breach of the duty to defend clause under the insurance agreement.[9]

This contention is unpersuasive for several reasons. First, Woodley's amended complaint alleged no breach of contract claim and he argued "breach of duty to defend"

---

[9] Under Lybecker v. United Pacific Insurance Co., 67 Wn.2d 11, 18, 406 P.2d 945 (1965), "[w]hen a third-party beneficiary has a right to sue on a written contract made for his benefit, the 6-year statute of limitations applies."

and "third party beneficiary" for the first time during summary judgment proceedings. For the reasons discussed above, we can decline to review these claims. Pac. Nw., 158 Wn.2d at 352; Kirby, 124 Wn. App. at 472; Shanahan, 82 F.3d at 781.

Even if we reach the merits, Woodley fails to prove he is a third party beneficiary of the insurance contract. A presumption exists that parties contract for their own benefit and not for a third party's benefit. JOSEPH M. PERILLO, CALAMARI & PERILLO, CONTRACTS § 17.3 at 666 (5th ed. 2003). This presumption is rebuttable premised on proof that the parties entered the agreement to benefit a third party. Lonsdale v. Chesterfield, 99 Wn.2d 353, 361-63, 662 P.2d 385 (1983). Creation of a third-party beneficiary contract requires that the contracting parties, "at the time they enter into the contract, intend that the promisor [here USAA] will assume a direct obligation to the claimed beneficiary [here Woodley]." Warner v. Design & Build Homes, Inc., 128 Wn. App. 34, 43, 114 P.3d 664 (2005) (emphasis added). The test of intent is an objective one—whether performance under the contract necessarily and directly benefits the third party. Warner, 128 Wn. App. at 43. An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate intent to create a contract directly obligating the promisor to perform a duty to a third party. Warner, 128 Wn. App. at 43. "This requires that the court, 'not examine the minds of the parties, searching for evidence of their motives or desires. Rather, [it] must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the petitioners.'" Burg v. Shannon & Wilson, Inc., 110 Wn. App. 798, 808, 43 P.3d 526 (2002) (alteration in original) (quoting Lonsdale, 99 Wn.2d at 362). Generally, the construction of a contract presents a question of law for the trial court, which may be

resolved on summary judgment. Marquez v. Univ. of Wash., 32 Wn. App. 302, 306, 648 P.2d 94 (1982).

Woodley fails to rebut the presumption that the parties here contracted for their own benefit and not for his benefit. Woodley points to no record evidence to establish that when Hanoch and USAA entered into the insurance agreement, USAA intended to assume a direct obligation to Woodley or any other personal attorney retained by Hanoch to defend against liability. No language in the insurance agreement shows that Woodley is an intended third party beneficiary. The insurance agreement shows Hanoch is the named insured and USAA the named insurer. No provision mentions Woodley or obligates USAA to reimburse an insured's personal attorney for defense services rendered. For example, under the heading "Supplementary Payments," the provision states in part:

> In addition to our limit of liability, we will pay on behalf of a covered person:
> . . . .
> 6. Other reasonable expenses incurred at our request.
> 7. All defense costs we incur.

Woodley asserts without citation to authority:

> As a practical matter the insurance company contemplates that the insurer will provide an attorney to the insured and pay for that attorney. Thus, the insurer's performance under the contract necessarily and directly benefits the attorney defending the insured, thereby making such defense attorney a third party beneficiary of the insurance contract.[10]

_____

[10] He fails to acknowledge that USAA declined to hire him after he offered his services. Even assuming a third party beneficiary contract here, under Woodley's rationale, the benefit inures to the attorney USAA actually hired, not Woodley.

Appellant's Br. at 29. This unsupported argument merits no consideration. See Cowiche Canyon, 118 Wn.2d at 809 (declining to consider arguments unsupported by citation to authority).

Woodley also suggests that he became a third party beneficiary when USAA breached its duty to defend Hanoch. He argues, "When an insurer breaches its duty to defend, a lawyer for the insured that performs the defense services is an intended third party beneficiary of the contract." Appellant's Br. at 27. He cites no authority for this argument.[11] See Cowiche Canyon, 118 Wn.2d at 809; State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). Woodley correctly notes that, as a general rule, "where an insurer wrongfully refuses to defend, it will be required to pay the judgment or settlement to the extent of its policy limits and also to reimburse the insured for his costs reasonably incurred in defense of the action." Waite v. Aetna Cas. & Sur. Co., 77 Wn.2d 850, 856, 467 P.2d 847 (1970). However, the only entities entitled to sue for wrongful failure to defend/bad faith are the insured and the insurance commissioner. Neigel v. Harrell, 82 Wn. App. 782, 784-87, 919 P.2d 630 (1996). The

---

[11] This argument contradicts Woodley's own statement of the law regarding third party beneficiaries. Woodley contends the parties intended him to be a third party beneficiary of the insurance contract. Yet he also argues he became a third party beneficiary because USAA breached its duty to defend. The argument that one can "become" a third party beneficiary if certain circumstances occur is inconsistent with the legal requirement that contracting parties must intend to create third party beneficiaries at the time of contracting. Warner, 128 Wn. App. at 43.

duty to defend is a duty owed to the insured.[12] No evidence in the record indicates that

Hanoch challenged the adequacy of USAA's defense or asked Woodley to bring a

breach of duty claim on her behalf.[13]

---

[12] It is unclear, but Woodley appears to collapse a breach of good faith argument with his breach of duty to defend argument.

[13] Woodley cites Mahler v. Szucs, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998), impliedly overruled on other grounds in Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 272 P.3d 802 (2012), for the proposition that "an insurer does not get a 'free ride' with respect to services offered by counsel for an insured." Appellant's Reply Br. at 20. In Mahler, our Supreme Court addressed an insurance company's policy provisions regarding reimbursement for personal injury protection (PIP) benefits advanced to insureds and whether the insurance company must share with its insureds the expenses necessary to secure recoveries from tortfeasors. Mahler, 135 Wn.2d at 411. The policy language at issue established that the insurer had a right to reimbursement of its PIP payments from its insureds from the proceeds of the insureds' recovery from their independent suits against the tortfeasor. Mahler, 135 Wn.2d at 420. Through settlement of their claims, the insureds in Mahler obtained funds in excess of the insurer's PIP payments. Mahler, 135 Wn.2d at 421. The insureds argued that the insurer was entitled to reimbursement of those PIP payments only if it paid a pro rata share of the costs involved in settling their cases, including attorney fees. Mahler, 135 Wn.2d at 421. Our Supreme Court agreed, based in part on the common fund doctrine: "[I]f [the insurer] wishes to receive the benefit of the funds [the insureds] recovered, it must share the expenses of recovering those funds." Mahler, 135 Wn.2d at 427. But the court was clear that the insurer must share the expenses with the insured, not the insured's attorney:

> To the extent counsel for the insured pursues a recovery for the insured, counsel is entitled to a single fee from the insured for the work performed. In Mahler, for example, counsel received a contingent fee from the overall recovery and placed an amount representing State Farm's PIP payments into Mahler's trust account. Counsel has already been fully compensated pursuant to the fee agreement. The money in trust, the settlement proceeds, belongs entirely to Mahler. State Farm, pursuant to [the insurance policy], has a chose in action against that money, less Mahler's reasonable expenses in recovering it, as reimbursement for its PIP payments . . . . The effort to secure a personal injury recovery, which involves both the insurer's PIP payments and the insured's other damages, must inure to the benefit of the insured, not the insured's lawyers.

Mahler, 135 Wn.2d at 429 (emphasis added). The Mahler rule "applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves." Mahler, 135 Wn.2d at 427.

68342-0-I/16

Attorney Fees

Woodley requests both trial and appellate attorney fees under RAP 18.1 and

Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673

(1991). Olympic Steamship extended "the right of an insured to recoup attorney fees

that it incurs because an insurer refuses to defend or pay the justified action or claim of

the insured . . . ." Olympic S.S., 117 Wn.2d at 52 (emphasis added). Woodley is not an

insured and his claim for fees depends on his third party beneficiary claim. We decline

to award Woodley attorney fees.

---

In contrast, the record contains no evidence that USAA made PIP payments to Hanoch, and USAA is not seeking any reimbursement from Hanoch's recovery against Western Ports. This is not a common fund case. Woodley, not Hanoch, seeks recovery of fees against USAA. Mahler does not support Woodley's argument.

Citing Griffin v. Allstate Insurance Co., 108 Wn. App. 133, 142-43, 149, 29 P.3d 777, 36 P.3d 552 (2001) and National Surety Corp. v. Immunex Corp., 162 Wn. App. 762, 779-80, 256 P.3d 439 (2011), aff'd, 176 Wn.2d 872 (2013), Woodley also claims that "an insured is entitled to reimbursement of all fees incurred prior to the tender of the case to the insurer that are necessary to defend the insured." Appellant's Reply Br. at 21. In his statement of additional authorities, Woodley cites Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 58 P.3d 276 (2002) and Arch Ins. Co. v. Scottsdale Ins. Co., 2010 WL 4365817 (W.D. Wash. 2010) for similar propositions. However, those cases (1) involved claims for bad faith and breach of duty to defend brought by the insured (Griffin, Vanport Homes); (2) addressed situations where the primary insurer denied any duty to defend and a secondary insurer later sought equitable contribution (Arch Ins. Co.); or (3) addressed whether late tender relieves the insurer of its duty to defend and whether an insured may recover pre-tender defense costs even after providing late tender (National Surety Corp.). They do not hold that an insured's personal counsel is entitled to pre-tender defense fees where the insured makes no breach of duty to defend claim and does not argue that the insurer failed to defend her prior to the filing of the lawsuit. Here, USAA began investigating the case the day after Hanoch's accident and Hanoch made no claim for reimbursement of fees she paid to Woodley. Woodley has no standing to bring this claim.

-16-

## CONCLUSION

Because Woodley fails to establish that a six-year statute of limitations applies to his claims, we affirm summary judgment dismissal and deny his attorney fees request.

_Jau, J._

WE CONCUR:

_Spearman, A.C.J._                    _Becker, J._