[No. 30722-7-II.    Division Two.    May 10, 2005.]

CURTIS E. WARNER ET AL., *Petitioners*, v. DESIGN AND BUILD
HOMES, INC., ET AL., *Respondents*.

*Keith H. Hirokawa*, *David M. Phillips*, and *Mark A. Erikson* (of *Mark A. Erikson Attorney at Law, P.L.L.C.*), for petitioners.

*Steven A. Kraemer* and *Mark E. Olmsted* (of *Hoffman Hart & Wagner*) (*Janet M. Schroer* and *Ruth C. Rocker*, of counsel); *Robert E. Sabido* (of *Cosgrave Vergeer Kester, L.L.P.*) (*Thomas M. Christ*, of counsel); and *Alfred E.*

*Donohue* and *Ray P. Cox* (of *Forsberg & Umlauf, P.S.*), for respondents.

¶1 QUINN-BRINTNALL, C.J. — After Curtis and Ana Warner discovered structural defects and significant mold growth in their new home, they sued Design and Build Homes, Inc., (Design) and Omega Pacific Lath & Plaster, Inc., (Omega). The Warners asserted that Design, as the builder-vendor, had breached the implied warranty of habitability. As to Omega, the subcontractor, the Warners maintained that they were third-party beneficiaries under the contract between Omega and Design, which therefore entitled them to bring a claim for breach of an implied warranty of workmanlike construction. The trial court granted Design and Omega's motion for summary judgment and the Warners appeal. Because the Warners are not third-party beneficiaries to the contract between Design and Omega and because they disclaimed all implied warranties when they purchased the property "as is," we affirm.

## FACTS

¶2 In March 1999, the Warners entered into a purchase and sale agreement with Design for the sale of a new home. The agreement, drafted by the Warners' real estate agent, included a clause stating that the Warners had inspected the property and agreed to purchase the property "in its present 'as is' condition." Clerk's Papers (CP) at 25. An addendum to the agreement also stated that the sale was conditioned on the Warners' approval of a general building inspection report. The addendum provided that the Warners could decline to purchase "on the basis of any condition identified in the inspection report that the inspector recommends be corrected." CP at 28. If the inspector

recommended further evaluation of the home by a specialist, then the addendum gave the Warners additional time to complete this further evaluation. The addendum also gave Design the option to preserve the contract for sale by correcting any condition disapproved by the Warners.

¶3 The Warners had the home inspected. The inspection report contained the following findings and recommendations: (1) "exterior wall cracks" and "bulging in the stucco" on the rear wall, which "should be further evaluated to verify that a problem does not exist, and what correction is needed to repair/seal the cracks"; (2) "evidence of past water in the crawl space at the north wall," which should be monitored; and (3) the "flashing at the front wall . . . should be checked, due to the potential of water leaking into the stucco." CP at 415-16. The inspection report recommended that a certified professional engineer complete a further evaluation "where there are structural concerns about the building" because "[a]ssessing the structural integrity of a building is beyond the scope of a typical home inspection." CP at 415.

¶4 The Warners declined to have a further evaluation completed, but they did request that Design repair certain conditions identified in the inspection report. These conditions included the exterior wall cracks and defects in the flashing and stucco. After these conditions were repaired, the Warners completed a walk-through inspection and closed the sale of the property.

¶5 In September 2001, the Warners began noticing leaks and water damage inside the home. They hired a professional stucco consultant who concluded that the water intrusion was due to defective stucco installation. The Warners also hired an industrial hygienist to evaluate mold contamination in the interior of the home. The hygienist concluded that the water intrusion had led to a significant presence of "several potentially toxic species of airborne fungi" throughout the house. CP at 247.

¶6 The Warners moved out of the home when it became apparent that Ana Warner and the Warner children were

having allergic reactions to the mold. The Warners then hired an engineer and construction company to repair and replace the exterior siding as well as damaged structural components. The engineer eventually concluded that "substantial water intrusion [had] . . . resulted in substantial rot and fungal growth" which had caused "structural damage to the sheathing and framing components of the Residence." CP at 352-53. The engineer opined that if the water intrusion, rot, and fungus had been allowed to continue, the home would have collapsed within a reasonably foreseeable period.

¶7 In November 2001, the Warners sued Design and Omega. Design had subcontracted with Omega to install the stucco siding. The Warners alleged that Design had breached the implied warranty of habitability and Omega had breached a warranty of workmanlike construction implicit in the contract between Omega and Design, to which the Warners claimed damages as third-party beneficiaries. The trial court granted Design and Omega summary judgment against the Warners.[1] The Warners appeal.[2]

---

[1] In its memorandum opinion, the trial court stated only that the analysis of an unpublished opinion was directly on point. The record does not reflect whether this opinion was cited to the court by one of the parties. We remind all parties and the trial court that "[u]npublished opinions have no precedential value and should not be cited or relied upon in any manner." *Skamania County v. Woodall*, 104 Wn. App. 525, 536 n.11, 16 P.3d 701, *review denied*, 144 Wn.2d 1021 (2001), *cert. denied*, 535 U.S. 980 (2002); *State v. Fitzpatrick*, 5 Wn. App. 661, 668, 491 P.2d 262 (1971) ("[U]npublished opinions . . . do not become a part of the common law of the state of Washington. If the trial courts were to consider them it . . . would permit any group of lawyers to collect such opinions and create an unfair advantage by citing cases not available to their opponents."), *review denied*, 80 Wn.2d 1003 (1972).

[2] It came to this court's attention at oral argument that not all parties to this case are currently before this court. The grant of summary judgment before us did not resolve other claims between Design and a third party. A party seeking to appeal a final judgment which does not dispose of all claims may do so as a matter of right only if the trial court concludes, in a written order supported by findings, that there is no just reason for delay. RAP 2.2(d). Because no such order was entered here, the Warners could seek only discretionary review by this court. RAP 2.2(d). In the interest of judicial economy, we treat the Warners' notice of appeal as a motion for discretionary review and we grant review. *See* RAP 1.2(c); *Waller v. State*, 64 Wn. App. 318, 338, 824 P.2d 1225, *review denied*, 119 Wn.2d 1014 (1992).

## ANALYSIS

¶8 The Warners assert that the trial court erred in granting summary judgment to Design and Omega. This appeal turns on two issues: (1) whether the "as is" clause in the Warners' purchase and sale agreement waived all implied warranties, including the warranty of habitability; and (2) whether the Warners are third-party beneficiaries to the contract between Omega and Design. These are questions of law which we review de novo. CR 56(c); *Dep't of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993).

"As Is" Clause and Waiver of the Implied Warranty of Habitability

¶9 The contract between the Warners and Design required the Warners' approval of a general building inspection report. If this report listed problems with the home, Design could correct them. If the report recommended further evaluation, the Warners could delay closing on the property so that the evaluation could be completed. Under the purchase and sale agreement, the Warners agreed to purchase the property "as is" if (1) no conditions were identified in the report and a further evaluation was not recommended; or (2) Design repaired any conditions, identified in either the report or the further evaluation, which the Warners wanted fixed. Satisfaction of one of these two alternatives was a condition precedent to the Warners' agreement to purchase the home "as is."

¶10 Although the inspection report recommended further structural evaluations of the home, the Warners did not conduct them. The Warners did request that certain conditions in the inspection report be fixed. It is undisputed that Design honored the Warners' request. These decisions triggered the purchase and sale agreement's "as is" clause.

¶11 An "as is" clause means that the buyer is purchasing property in its present state or condition. *Olmsted v. Mulder*, 72 Wn. App. 169, 176, 863 P.2d 1355 (1993), *review*

*denied*, 123 Wn.2d 1025 (1994). "The term ["as is"] implies that the property is taken with whatever faults it may possess and that the seller or lessor is released of any obligation to reimburse the purchaser for losses or damages that result from the condition of the property." *Olmsted*, 72 Wn. App. at 176. Because a warranty disclaimer is not favored in the law, it must meet two conditions to be effective: (1) it must be explicitly negotiated or bargained for and (2) it must set forth with particularity what is being disclaimed. *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wn.2d 428, 438, 47 P.3d 940 (2002). An "as is" clause is generally inserted in a contract by the seller and the negotiation and particularity requirements are designed to protect a buyer who, not being in a position of equal bargaining power, is forced into signing a contract prepared by the seller that may contain fine print and boilerplate language. *Olmsted*, 72 Wn. App. at 176; *Lyall v. DeYoung*, 42 Wn. App. 252, 257, 711 P.2d 356 (1985), *review denied*, 105 Wn.2d 1009 (1986).

¶12 Here, the Warners do not assert that they were either unaware of the "as is" clause or in a position of bargaining power which was grossly disproportionate to Design; either contention would be undercut by the fact that the Warners' real estate agent drafted the purchase and sale agreement. As such, the "negotiation" element is satisfied. *See Olmsted*, 72 Wn. App. at 176-77; *Miller v. Badgley*, 51 Wn. App. 285, 294, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988). But the Warners maintain that the "as is" clause is ambiguous and, therefore, ineffective and unenforceable, because it does not explicitly state the warranties being disclaimed. We disagree.

¶13 "[U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language *which in common understanding* calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied war-

ranty." RCW 62A.2-316(3)(a) (emphasis added);[3] *see also Ltd. Flying Club, Inc. v. Wood*, 632 F.2d 51, 56 (8th Cir. 1980) ("It is fairly clear that ["as is"] . . . operates to disclaim implied warranties."). As the just quoted language indicates, an "as is" clause is unambiguous: the seller makes no warranties regarding the item sold. It is thus unnecessary to list warranties, none of which are being made.

¶14 Inexplicably, the Warners' agent drafted an agreement containing an "as is" clause which a reasonable person would understand to waive all implied warranties, including the warranty of habitability. Moreover, before the agreement became binding, the Warners were told about existing defects in the stucco and were advised that they should pursue further inspection and evaluation of potential nonvisible stucco and structural deficiencies. The Warners chose not to pursue these further inspections. As our Supreme Court has stated: "They had ample opportunity to inspect. They had their own [real estate agent and inspector]. The extent to which they inspected . . . was their choice. The contractual language is clear. This court not only should not, but it cannot, rewrite the clear agreement of the parties." *Frickel v. Sunnyside Enters., Inc.*, 106 Wn.2d 714, 721, 725 P.2d 422 (1986). The trial court did not err in giving effect to the Warners' "as is" clause by granting Design and Omega summary judgment.

THIRD-PARTY BENEFICIARY

¶15 The Warners next assert that they were third-party beneficiaries to the stucco contract between Design and Omega and are therefore entitled to bring a claim against Omega for breach of that contract's implied warranty of workmanlike construction. *See generally Frickel*, 106 Wn.2d at 726 (Pearson, J., dissenting) (discussing and distinguishing between implied warranties arising in con-

---

[3] Although the Uniform Commercial Code does not apply to real estate transactions, it provides guidance on disclaimers of warranties. *Olmsted*, 72 Wn. App. at 178.

tracts for the construction of a dwelling, e.g., workmanlike construction, and those arising in contracts for the sale of a new house by a builder-vendor, e.g., habitability). We disagree.

¶16 The Warners do not cite a single Washington case recognizing an implied warranty for workmanlike performance.[4] Moreover, both Divisions One and Three of this court have concluded that such an implied warranty does not exist in a construction contract. *Anderson Hay & Grain Co. v. United Dominion Indus., Inc.*, 119 Wn. App. 249, 261, 76 P.3d 1205 (2003); *Urban Dev., Inc. v. Evergreen Bldg. Prods. L.L.C.*, 114 Wn. App. 639, 646, 59 P.3d 112 (2002), *aff'd sub nom. Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 151 Wn.2d 534, 90 P.3d 1062 (2004). As Division One has noted: "Contracting parties have their remedies for breach and can negotiate for warranties if they so choose. An action for implied warranty of workmanlike performance in construction contracts would be strikingly similar to a cause of action for negligent construction, which is not recognized in Washington." *Urban Dev., Inc.*, 114 Wn. App. at 646 (citing *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 417, 745 P.2d 1284 (1987)). But we

---

[4] In asserting that Washington has recognized an implied warranty for workmanlike performance, the Warners cite *Eastlake Construction Co. v. Hess*, 102 Wn.2d 30, 686 P.2d 465 (1984), and *Klos v. Gockel*, 87 Wn.2d 567, 554 P.2d 1349 (1976). In *Klos*, the court quoted from a North Carolina case which held that " 'in every contract for the sale of a recently completed dwelling . . . the vendor, *if he be in the business of building such dwellings*, shall be held to impliedly warrant to the initial vendee that . . . the dwelling . . . is constructed in a workmanlike manner.' " 87 Wn.2d at 570 (quoting *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974)). But the *Klos* court did not adopt the North Carolina court's holding and it specifically indicated that it was discussing the implied warranty of habitability. 87 Wn.2d at 570.

And in *Hess*, the issue was whether a contractor's misrepresentations in a bid had an impact upon the public interest for purposes of the Consumer Protection Act (CPA), chapter 19.86 RCW. 102 Wn.2d at 49-50. In holding that misleading bids amounted to an unfair or deceptive act under the CPA, the *Hess* court noted that when a contractor submits a bid, "he is, in effect, representing that he will perform that job in a workmanlike manner." 102 Wn.2d at 51. As Division One stated, "Nothing in [*Hess*] . . . suggests that [an implied warranty of workmanlike construction] is implicit in construction contracts." *Urban Dev., Inc. v. Evergreen Bldg. Prods., L.L.C.*, 114 Wn. App. 639, 646, 59 P.3d 112 (2002), *aff'd sub nom. Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 151 Wn.2d 534, 90 P.3d 1062 (2004).

need not address whether an implied warranty of workmanlike performance existed in the contract between Omega and Design for, even if it did, the Warners are not third-party beneficiaries to that contract.

¶17 A third-party beneficiary contract exists when the contracting parties, at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary. *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99, 720 P.2d 805 (1986). The test of intent is an objective one: Whether performance under the contract necessarily and directly benefits the third party. *Postlewait Constr., Inc.*, 106 Wn.2d at 99. An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party. *Del Guzzi Constr. Co. v. Global N.W. Ltd.*, 105 Wn.2d 878, 886, 719 P.2d 120 (1986).

¶18 In the construction context, the prevailing rule[5] is that a property owner is generally not a third-party beneficiary of a contract between the general contractor and a subcontractor:

> Such contracts [between a principal contractor and subcontractors] are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. It seems, therefore, that the owner has no right against the subcontractor, in the absence of clear words to the contrary. The owner is neither a creditor beneficiary nor a donee beneficiary; the benefit that he receives from performance must be regarded as merely incidental.

---

[5] *Tarin's, Inc. v. Tinley*, 2000-NMCA-48, 129 N.M. 185, 191, 3 P.3d 680; *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 419 (Tex. App. 1995).

9 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 779D (1979) (footnote omitted); *see generally* Melvin A. Eisenberg, *Third-Party Beneficiaries*, 92 COLUM. L. REV. 1358, 1402-06 (1992). The *Restatement (Second) of Contracts* endorses the same rule by way of an illustration: "A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building." RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. e, illus. 19 (1979).

¶19 The facts of this case mirror those posed by the *Restatement (Second) of Contracts* and closely parallel those in *McDonald Construction Co. v. Murray*, 5 Wn. App. 68, 485 P.2d 626, *review denied*, 79 Wn.2d 1009 (1971). In *Murray*, a construction company undertook construction of an addition to a commercial building. The construction contract provided that the work was to be completed within a certain period because the owner had found a tenant for the premises. When the construction company failed to meet the deadline, the prospective tenant brought suit, seeking lost profits from the construction company under the theory that it was a third-party beneficiary to the construction contract. In affirming the trial court's dismissal of the tenant's claim, Division One concluded that the tenant derived no direct benefit from the construction contract and "[a]ny benefit which [the tenant] could assert would be derived from the intervening tenancy agreement which it had with the [owner]." 5 Wn. App. at 70-71.

¶20 Like the tenant in *Murray*, any benefit the Warners could assert arises out of their contract with Design to purchase the home. The Warners were not third-party beneficiaries to the construction contract between Design and Omega and consequently had no right of action against Omega for any breach of the subcontract. Thus, even if there were a cause of action for breach of the implied warranty of workmanlike construction, which we do not hold that there is, the Warners were not third party

beneficiaries to the contract and had no right to bring such a claim against Omega.

¶21 Affirmed.

MORGAN and BRIDGEWATER, JJ., concur.