IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANDREW MACGREGOR ROBERTSON and RENEE ESME ROBERTSON, in their individual and marital community; and CAY MICHAEL MIERISCH and CASSANDRA MIERISCH, in their individual and marital community,<br><br>     Appellants,<br><br>   v.<br><br>JUN YU DEVELOPMENT II, LLC, a Washington limited liability company; and JANICKI LOGGING & CONSTRUCTION CO., INC., a Washington corporation,<br><br>     Respondents. | No. 79613-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Andrew Robertson, Renee Robertson, Cay Mierisch, and Cassandra Mierisch (collectively Robertsons) own property in Whatcom County. When the Robertsons purchased their property in 2014, the seller, Trillium Corporation, assigned to the Robertsons its claims against third parties arising from any trespasses that had occurred during Trillium's ownership. The Robertsons subsequently sued Janicki Logging & Construction Co. Inc. and Jun Yu Development II LLC (JYD), alleging trespass and other related claims arising out of Janicki's activities on the property.

Janicki, joined by JYD, moved for summary judgment, arguing that the Robertsons lacked standing because (1) the assignment of Trillium's trespass

claims to the Robertsons merged into the deed between Trillium and the Robertsons and (2) the "as is" clause in the purchase agreement between Trillium and the Robertsons barred the Robertsons' claims. The trial court granted the motion and dismissed the Robertsons' claims.

This was error. Because the only reasonable conclusion from the record is that Trillium and the Robertsons intended that the assignment not merge into the deed, merger does not apply. And although the "as is" clause may have barred certain claims against *Trillium*, it did not bar the Robertsons' claims against JYD and Janicki. Therefore, we reverse and remand for further proceedings.

BACKGROUND

JYD owns almost 400 acres of property, which it purchased in late 2011, in the Semiahmoo area of Whatcom County. In June 2012, JYD retained Janicki to perform logging and related services on JYD's property. It is undisputed that in the contract between JYD and Janicki, the exhibits designating the area in which Janicki's activities were to take place included a 20-acre parcel, located at 8746 Semiahmoo Drive (8746 Property), that was owned by Trillium and *not* by JYD.

Additionally, and although the parties disagree about the extent of Janicki's activities on the 8746 Property and the nature and amount of damages resulting therefrom, it is undisputed that in early 2013, Janicki conducted some surface water reditching operations on the 8746 Property. It also is undisputed that later in 2013, Janicki harvested some trees from the 8746 Property.

2

According to Janicki's principal, the reditching and logging activities conducted on the 8746 Property were conducted "under the mistaken belief that the property was owned by [JYD]."

In June 2014, Trillium and the Robertsons entered into a Real Estate Purchase and Sale Agreement (REPSA) whereby Trillium agreed to sell the 8746 Property to the Robertsons. Under the REPSA, Trillium agreed to assign certain trespass and related claims to the Robertsons. The REPSA also contained an "as is" clause stating that except otherwise set forth in the REPSA, "the Property is being sold by Seller, and Buyer agrees to accept the Property, 'AS-IS' in its condition on the Closing Date."

On July 11, 2014, Trillium conveyed the 8746 Property to the Robertsons by statutory warranty deed (Deed).

On July 23, 2014, Trillium and the Robertsons entered into an "Assignment and Assumption of Claims" (Assignment Agreement) whereby Trillium assigned certain trespass and related claims to the Robertsons:

> Seller hereby assigns, conveys and delivers to Buyer all of Seller's right, title and interest, if any, in any and all claims against third parties arising from any trespass on the Property or timber trespass on timber and other forest products located or previously located on the Property, including any and all claims under RCW Chapter 64.12 and/or RCW 4.24.630.

On June 19, 2015, the Robertsons sued JYD and Janicki, asserting causes of action for ejectment, trespass and conversion, statutory trespass, timber trespass, and injunction or abatement related to Janicki's activities on the 8746 Property. The Robertsons then moved for summary judgment, seeking an order confirming that JYD and Janicki committed statutory trespass or, in the

3

alternative, timber trespass or common law trespass. The Robertsons also sought an order declaring that the Robertsons "have incurred damages in the amount of $4,212.87 for the harvested timber" and that JYD and Janicki could not assert the "common enemy doctrine" as a defense to trespass.[1] The trial court initially granted the Robertsons' motion. But on reconsideration, the court denied the motion, citing the existence of remaining issues of material fact.

On October 6, 2017, the Robertsons filed another motion for summary judgment, arguing that certain of JYD's and Janicki's affirmative defenses should be stricken. The trial court denied this motion as well, again citing to remaining issues of fact.

On September 10, 2018, Janicki filed a summary judgment motion, in which JYD joined. Janicki pointed out that exhibit B to the Deed set forth what Janicki characterized as "exceptions and reservations to the deed describing matters retained by Trillium . . . and other encumbrances to the property." Janicki also pointed out that exhibit B listed, among other things, "[a]ny rights, interests or claims which may exist or arise by reason of" certain facts reflected by a July 21, 2014, survey, including a "[c]ulvert crossing" and "[d]itches." (Emphasis omitted.) Thus, Janicki argued, no interest in any claims arising out of the existing culvert crossing and ditches was ever transferred from Trillium to the

---

[1] "[T]he common enemy doctrine in Washington allows landowners to alter the flow of surface water to the detriment of their neighbors, so long as they do not block a watercourse or natural drainway, nor collect and discharge water onto their neighbors' land in quantities greater than, or in a manner different from, its natural flow." Currens v. Sleek, 138 Wn.2d 858, 862-63, 983 P.2d 626, 993 P.2d 900 (1999).

Robertsons, and Trillium's assignment of its trespass claims merged into the Deed. Janicki argued further that because the Robertsons were aware of the condition of the 8746 Property and purchased it "as-is," they "waived their ability to bring a claim for damages arising from the condition of the property." Therefore, contended Janicki, the only claim available to the Robertsons was one for the value of the timber harvested from the 8746 Property. Janicki argued that the value of that timber was no more than $1,000 and that treble damages were unwarranted because Janicki believed in good faith that it was harvested from property belonging to JYD. Finally, Janicki argued that even if the Robertsons could assert a trespass claim based on Janicki's reditching activities, there was no evidence that those activities caused any damages to the 8746 Property.

The trial court initially denied Janicki's motion. Janicki, joined by JYD, then moved for reconsideration. It argued, again relying on the doctrine of merger, that any assignment of Trillium's trespass claims to the Robertsons did not survive merger with the Deed.

On February 19, 2019, the trial court entered an order granting Janicki's motion for reconsideration and dismissing the Robertsons' claims with prejudice. The Robertsons appeal, contending that the trial court erred by (1) summarily dismissing their claims and (2) denying their earlier motions for summary judgment. We address each of these contentions below.

DISMISSAL OF THE ROBERTSONS' CLAIMS

The Robertsons contend that the trial court erred by summarily dismissing their claims. We agree.

5

Standard of Review

The trial court initially denied Janicki's motion for summary judgment, in which Janicki (joined by JYD) relied on the merger doctrine and the fact that the Robertsons purchased the 8746 Property "as is" to argue that the Robertsons lacked standing. Then, on reconsideration, it granted Janicki's motion. Under these circumstances, this court reviews the trial court's decision de novo, and the usual standards for summary judgment apply. Weber v. Budget Truck Rental, LLC, 162 Wn. App. 5, 8, 254 P.3d 196 (2011). To that end, summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Cameron v. Atlantic Richfield Co., 8 Wn. App. 2d 795, 799, 442 P.3d 31 (2019).

Analysis

The Robertsons contend that trespass claims are assignable and that the Assignment Agreement effectively assigned the claims described therein from Trillium to the Robertsons. Thus, the Robertsons argue, the trial court erred when it dismissed the Robertsons' claims, apparently accepting Janicki's argument that the Robertsons lacked standing. We agree with the Robertsons.

Trespass claims are tort claims. Birchler v. Castello Land Co., 133 Wn.2d 106, 115, 942 P.2d 968 (1997). And "a tort claim for damage to property is assignable under the law of this state." Cooper v. Runnels, 48 Wn.2d 108, 109, 291 P.2d 657 (1955); see also Carlile v. Harbour Homes, Inc., 147 Wn. App. 193, 207, 194 P.3d 280 (2008) ("The traditional test for whether a cause of action is

assignable is whether the claim would survive to the personal representative of the assignor upon death. If it would, the cause of action is assignable." (footnotes omitted), <u>review granted and dismissed</u>, 166 Wn.2d 1015 (2009)); RCW 11.48.010 (providing that personal representative "may institute suit . . . for trespass of any kind or character."). Furthermore, "[n]o particular words of art are required to create a valid and binding assignment." <u>Carlile</u>, 147 Wn. App. at 208. Instead, "[a]ny language showing the owner's intent to transfer and invest property in the assignee is sufficient." <u>Carlile</u>, 147 Wn. App. at 208.

Here, the plain language of the Assignment Agreement clearly evinces Trillium's intent to assign its trespass claims to the Robertsons. Furthermore, neither JYD nor Janicki contends that trespass claims cannot, as a general matter, be assigned. Instead, relying on the doctrine of merger and on the REPSA's "as is" clause, they challenge the validity of the Assignment Agreement. But as further discussed below, neither of these challenges is persuasive, and the trial court erred by summarily dismissing the Robertsons' claims.

*Merger*

JYD and Janicki first contend that the Assignment Agreement merged into the Deed, i.e., that upon execution of the Deed, which did not itself include an assignment of Trillium's trespass claims, the Assignment Agreement was no longer independently enforceable. We disagree.

"The doctrine of merger is founded on the parties' privilege to change the terms of their contract at any time prior to performance." <u>Barber v. Peringer</u>, 75

7

Wn. App. 248, 251, 877 P.2d 223 (1994). "Execution, delivery, and acceptance of the deed becomes the final expression of the parties' contract and therefore subsumes all prior agreements." Barber, 75 Wn. App. at 251. The merger doctrine thus provides that "[i]n general, the provisions of a real estate purchase and sales agreement merge into the deed" and are no longer enforceable. Barber, 75 Wn. App. at 251.

The merger doctrine is, however, subject to exceptions. For example, it does not apply to "actions based on fraud or mistake." Brown v. Johnson, 109 Wn. App. 56, 60, 34 P.3d 1233 (2001). It "also does not apply where terms of a purchase and sale agreement are not contained in or performed by the execution and delivery of the deed, are not inconsistent with the deed, and are independent of the obligation to convey." Brown, 109 Wn. App. at 60. "Whether a [provision of a real estate purchase and sale agreement] merges into a deed depends on the parties' intent." Failes v. Lichten, 109 Wn. App. 550, 554, 37 P.3d 301 (2001). Here, the only reasonable conclusion from the record is that the parties intended for Trillium's assignment of its trespass claims *not* to merge into the Deed.

Black v. Evergreen Land Developers, Inc., 75 Wn.2d 241, 450 P.2d 470 (1969), is instructive. The dispute in Black involved two plots of land in Somerset, a hillside development east of Lake Washington. Black, 75 Wn.2d at 242. Plaintiff William Black and his wife purchased a home on lot 72 in 1962 based, in part, on the selling broker's oral guarantee that their view of Lake Washington would never be impaired. Black, 75 Wn.2d at 242-43. Neither the

parties' purchase agreement nor the deed conveying lot 72 to the Blacks contained such a guarantee. Instead, the purchase agreement contained an integration clause stating, "'There are no verbal or other agreements which modify or affect this agreement,'" and the deed "contain[ed] the simple clause that the identified property is 'Subject to rights, restrictions, easements and covenants of record, if any.'" Black, 75 Wn.2d at 243.

In 1964, the lot situated downhill and to the west (i.e., lakeward) of the Black property was purchased by the Avann family. Black, 75 Wn.2d at 242. When it became clear that the house the Avanns were building would impair the Blacks' view of Lake Washington, the Blacks sued the sellers. Black, 75 Wn.2d at 246, 249. The trial court resolved the case against the Blacks, including by determining that "all statements, written and oral, made by or on behalf of any of the defendants to the [Blacks] with respect to the view from lot 72 . . . were merged in the [purchase] agreement or the deed." Black, 75 Wn.2d at 247-48.

The Blacks appealed, and the Supreme Court concluded that merger did not apply. Black, 75 Wn.2d at 251. In doing so, the court observed that the deed for the Blacks' lot contained only a simple clause stating that it was "[s]ubject to rights, restrictions, easements and covenants of record." Black, 75 Wn.2d at 249. In other words, the deed did not plainly express the parties' intent with regard to merger of the oral covenant that the Blacks' view of Lake Washington would not be impaired. Black, 75 Wn.2d at 249. But the court also observed that the oral view covenant was not inconsistent with the deed. Black, 75 Wn.2d at 249. The court also stated, "[W]e [do not] find that there was any intention on the

part of either party to surrender this covenant by merger—the evidence is entirely to the contrary." Black, 75 Wn.2d at 249. The court noted, for example, that throughout the construction of the Avann house, the selling broker continued to reassure the Blacks that their view would not be impaired, and that "the defendants affirmatively demonstrated the existence of this oral covenant on several occasions by using a crossbar to show the [Blacks] how high the Avann roof could be without impairing their view." Black, 75 Wn.2d at 249-50. Indeed, the court ultimately concluded that the evidence confirming the view covenant's existence was so "overwhelming" that it declined even to enforce the express integration clause in the purchase agreement. Black, 75 Wn.2d at 250; see also Black, 75 Wn.2d at 251 ("To now hold that the 'boilerplate' at the conclusion of the . . . agreement would vitiate the manifest understanding of the parties as evidenced by this record would amount to a constructive fraud practiced by the defendants upon the [Blacks].").

Here, as in Black, nothing in the Deed itself plainly expresses the parties' intent with regard to Trillium's assignment of its trespass claims to the Robertsons. But as in Black, it is more than clear that the parties did *not* intend for Trillium's assignment to merge into the Deed. Specifically, the REPSA expressly set forth Trillium's obligation to assign those claims as an entirely separate obligation from Trillium's obligation to convey. The REPSA also contemplated that a separate agreement would be used for the assignment, and consistent with the REPSA, the parties later memorialized the assignment by entering into the Assignment Agreement. In other words, Trillium's obligation to

10

assign its trespass claims, like the seller's view covenant in <u>Black</u>, was not inconsistent with the Deed and was plainly intended to be independent of Trillium's obligation to convey the 8746 Property.  <u>See</u> <u>Brown</u>, 109 Wn. App. at 60 (merger does not apply "where terms of a purchase and sale agreement are not contained in or performed by the execution and delivery of the deed, are not inconsistent with the deed, and are independent of the obligation to convey").  Therefore, the merger doctrine does not apply here.[2]

Janicki and JYD disagree.  They contend that by its plain terms, the Deed extinguished any trespass claims.  They point out that the Deed itself states, "See Attached Exhibit 'B' for Exceptions."  They also point out that exhibit B to the Deed begins with the language "SUBJECT TO:" and then lists, among other items:

> Any rights, interests or claims which may exist or arise by reason of the following facts shown by Survey of the land by NORTHWEST SURVEYING AND GPS, INC., dated July 21, 2014, Job No. 14-157, as follows:
>
> A.    Service pole and line thereto on the West side of Parcel A;
> B.    Gravel access roads through Parcel A and along the West side of Parcel D;
> C.    *Culvert crossing on the East and South side of Parcel A;*
> D.    *Ditches through Parcels A, C and D; and*
> E.    Overhead phone line along the West line of Parcels B and C[.]

---

[2] In October 2018, after Janicki moved for summary judgment based on the merger doctrine, Trillium executed a "Confirming Assignment and Assumption of Claims" in which it again assigned certain trespass claims to the Robertsons "[t]o the extent not already assigned in the Assignment [Agreement]." Because Trillium and the Robertsons' intent is very clear from the REPSA and the Assignment Agreement alone, we do not rely on the confirming assignment.

(Emphasis added.) Janicki and JYD contend that because exhibit B to the Deed expressly referenced culvert crossings and ditches, any rights that the Robertsons had to bring claims arising out of those conditions were extinguished by the Deed. But this argument is unpersuasive because it rests on one or more of three premises, each of which is flawed.

First, JYD and Janicki's argument assumes that exhibit B was intended to list exceptions from the property conveyed by Trillium to the Robertsons, rather than mere limitations on the *warranties* that inhere in a statutory warranty deed.[3] That is, JYD and Janicki argue, in essence, that the Deed carves out the very claims that the Assignment Agreement purports to transfer and, thus, the two documents are inconsistent such that no exception from merger can apply. But the Deed's use of the term "exceptions" to describe exhibit B creates, at best, some ambiguity as to whether each item listed therein is an exception in the true sense, or merely a warranty limitation.[4] And as discussed, the overwhelming

---

[3] Under RCW 64.04.030, a statutory warranty deed, once executed, "shall be deemed and held a conveyance in fee simple to the grantee, his or her heirs and assigns, with covenants on the part of the grantor: (1) That at the time of the making and delivery of such deed he or she was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he or she warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his or her heirs and personal representatives, as fully and with like effect as if written at full length in such deed."

[4] "An exception in a deed is a clause that withdraws from its operation some part of the thing granted and which otherwise has passed to the grantee under the general description." Harris v. Ski Park Farms, Inc., 62 Wn. App. 371, 376, 814 P.2d 684 (1991), aff'd, 120 Wn.2d 727, 844 P.2d 1006 (1993); see also

extrinsic evidence, and in particular the evidence of Trillium's independent obligation to assign its trespass claims via a separate assignment agreement, leads to only one reasonable conclusion:  The "exception" on which Janicki and JYD rely is not an exception from conveyance, but merely a limitation on warranties that precludes the Robertsons from bringing a breach of warranty claim against Trillium based on matters disclosed in the survey.  See Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003) (court may look to extrinsic evidence to interpret ambiguous deed).  Thus, the Deed and the Assignment Agreement are not inconsistent.

Second, Janicki points out that the REPSA was dated June 11, 2014, while the Deed was not executed until July 11, 2014, a month later.  Janicki then asserts that Trillium's assignment of its claims was part of the REPSA and, thus, predated the Deed by a month.  But although the REPSA included an obligation *to assign* as well as an exhibit showing the *form* the assignment would take, *the assignment itself* was not made until July 23, 2014, after the Deed was executed.  Thus, even assuming our merger analysis would change if the Assignment Agreement predated the Deed, it did not.

Third and finally, Janicki asserts in passing that trespass claims can be assigned only by deed.  But it does not cite any authority to support that

---

9 THOMPSON ON REAL PROPERTY § 82.14, at 736 (3d Thomas ed. 2011) (observing, with regard to the drafting of title covenants, that "[t]he use of the phrases 'subject to' or 'except' must be approached with caution" and that "the 'except' clause can create ambiguities as to whether the 'except' language creates a technical exception or whether it is merely a limitation on the title warranties.").

proposition. Therefore, Janicki's assertion fails. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

We hold as a matter of law that Trillium's assignment of its trespass claims to the Robertsons did not merge into the Deed. See Pelly v. Panasyuk, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018) ("The rules of contract interpretation apply to interpretation of . . . a deed"); Marshall v. Thurston County, 165 Wn. App. 346, 351, 267 P.3d 491 (2011) ("Contract interpretation is a matter of law . . . when . . . the extrinsic evidence permits only one reasonable interpretation.").

*"As Is" Clause*

Janicki and JYD next argue that the Robertsons' claims against them were barred by the REPSA's "as is" clause. We disagree.

"An 'as is' clause generally means that the buyer is purchasing property in its present state or condition." Olmsted v. Mulder, 72 Wn. App. 169, 176, 863 P.2d 1355 (1993). "The term implies that the property is taken with whatever faults it may possess and that the *seller or lessor* is released of any obligation to reimburse the purchaser for losses or damages that result from the condition of the property." Olmsted, 72 Wn. App. at 176 (emphasis added). In other words, while an "as is" clause may bar the buyer from suing the *seller*, it does not limit the buyer's ability to sue third parties. Therefore, the "as is" clause was not a proper basis for dismissal of the Robertsons' claims.

14

Janicki and JYD disagree. While JYD does not cite any authority, Janicki relies on Warner v. Design & Build Homes, Inc., 128 Wn. App. 34, 114 P.3d 664 (2005). But that reliance is misplaced.

In Warner, Curtis and Ana Warner entered into a purchase and sale agreement with Design and Build Homes Inc. (Design) for the purchase of a new home. 128 Wn. App. at 36. The agreement was subject to the Warners' approval of a general building inspection report. Warner, 128 Wn. App. at 39. Additionally, under the agreement, the Warners agreed to purchase the house "as is" if Design repaired any conditions identified in the report that the Warners wanted fixed. Warner, 128 Wn. App. at 39.

The Warners had the home inspected, and the inspection report flagged issues related to bulging and cracking in the exterior stucco wall, as well as potential water leaking into the stucco. Warner, 128 Wn. App. at 37. Although the inspector recommended further evaluations, the Warners did not conduct them and instead requested only that the conditions in the inspection report be fixed. Warner, 128 Wn. App. at 39. Design honored the Warners' request, thus triggering the agreement's "as is" clause. Warner, 128 Wn. App. at 39.

The Warners later began noticing leaks and water damage, which a professional stucco consultant concluded was due to defective stucco installation. Warner, 128 Wn. App. at 37. The Warners sued Design, arguing that it had breached the implied warranty of habitability. Warner, 128 Wn. App. at 39. After the trial court granted summary judgment in favor of Design, the Warners appealed. Warner, 128 Wn. App. at 38.

On appeal, Division Two observed that "'[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.'" Warner, 128 Wn. App. at 40 (emphasis omitted) (quoting RCW 62A.2-316(3)(a)). The court also observed that the Warners did not assert that they were unaware of the "as is" clause or otherwise at a negotiating disadvantage. Warner, 128 Wn. App. at 40. Finally, the court observed that the Warners were told about defects in the stucco and advised to follow up, but decided not to do so. Warner, 128 Wn. App. at 41. The court thus concluded that the trial court did not err by giving effect to the "as is" clause and summarily dismissing the Warners' breach of warranty claim. Warner, 128 Wn. App. at 41.

In short, the Warner court held that an "as is" clause in a contract between a seller and a buyer precluded the buyer, who was not in an unequal bargaining position and who was aware of a potential defect before agreeing to the "as is" language, from suing the *seller* for breach of an implied warranty. But here, unlike in Warner, the Robertsons are not suing their seller for breach of an implied warranty. Instead, the Robertsons are suing a third party for trespass. Thus, Warner is not persuasive.

### *De Minimis Rule*

As a final matter, while JYD contends that any timber trespass claims are, like the Robertsons' other trespass claims, barred by the doctrine of merger, Janicki does not. Instead, Janicki argues that the Robertsons' timber trespass

16

claims were properly dismissed under the maxim "de minimis non curat lex," or the "de minimis rule," which provides that "'the law takes no notice of trivial things.'" Arnold v. Melani, 75 Wn.2d 143, 148, 449 P.2d 800, 450 P.2d 815 (1968); Bartel v. Emp't Sec. Dep't, 60 Wn.2d 709, 714, 375 P.2d 154 (1962). Janicki points out that its principal testified that the value of the timber was less than $1,000 and that even the Robertsons acknowledged, in an email, that "[t]he amount of timber taken is small." But competing evidence in the record indicates that the value of the timber was $4,212.87, a nontrivial amount and, in any event, "small" is not the same as trivial. Therefore, the de minimis rule does not provide a basis to affirm the trial court's dismissal of the Robertsons' timber trespass claim. Cf. Guay v. Wash. Nat. Gas Co., 62 Wn.2d 473, 478, 383 P.2d 296 (1963) (relying on the de minimis rule and declining to award treble damages where the trial court properly awarded only $1 in nominal damages as a basis for allowing costs "for an otherwise harmless trespass").

DENIAL OF THE ROBERTSONS'
SUMMARY JUDGMENT MOTIONS

The Robertsons contend that the trial court erred by denying their motions for summary judgment. Meanwhile, JYD argues that the trial court's denial of the Robertsons' motions is not properly before this court on appeal. We agree with JYD.

Under RAP 2.2(a), "[u]nless otherwise prohibited by statute or court rule" and subject to exceptions that do not apply here, a party may appeal from *only* certain, enumerated superior court decisions. Orders denying summary judgment are not listed in RAP 2.2 and generally are not appealable. See Sea-

17

Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 801-02, 699 P.2d 217 (1985).

Here, the Robertsons cite to no statute or other court rule to support our review of the trial court's orders denying their motions for summary judgment, nor do they argue that discretionary review is warranted. Cf. Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wn. App. 368, 380, 901 P.2d 1079 (1995) ("When the trial court denies summary judgment on one issue, but enters a final judgment on a distinct, dispositive issue, a party seeking review of the summary judgment determination must establish that discretionary review is warranted."). Furthermore, because we are reversing the trial court's dismissal of the Robertsons' claims, the issues raised in the Robertsons' motions remain pending trial and can be reviewed once a final judgment is entered. Therefore, we decline to review the trial court's orders denying the Robertsons' motions for summary judgment.

The Robertsons contend that their appeal from the trial court's "final judgment" dismissing the entire case "trigger[ed] jurisdiction over all interlocutory orders." But the Robertsons point to no court rule or statute that supports this proposition, and the two cases they cite do not support it. Specifically, in Gardner v. First Heritage Bank, Division Two explained, in an admittedly confusing footnote, that it would, under the circumstances of *that* case, review an oral ruling *granting* the defendant's motion for summary judgment even though the plaintiff did not assign error to that oral ruling until his opening brief. 175 Wn. App. 650, 658 & n.15, 303 P.3d 1065 (2013). And in DGHI, Enterprises v. Pacific

Cities, Inc., the Supreme Court *declined* to review a denial of summary judgment, observing that the order was interlocutory in nature and that the issue with regard to which summary judgment was sought could be reviewed after trial in an appeal from the final judgment. 137 Wn.2d 933, 949, 977 P.2d 1231 (1999). Neither of these cases supports the Robertsons' contention that the trial court's orders denying the Robertsons' motions for summary judgment are appealable at this juncture.

CONCLUSION

We hold, as matters of law, that (1) Trillium's assignment of its trespass claims, as described in the Assignment Agreement, did not merge into the Deed, (2) the REPSA's "as is" clause did not bar the Robertsons from pursuing their claims against JYD and Janicki, and (3) the de minimis rule does not apply to the Robertsons' timber trespass claims. Additionally, because merger, the "as is" clause, and the de minimis rule are the only arguments advanced by JYD and Janicki to challenge the Robertsons' standing to bring their claims, we hold that the trial court erred by dismissing the Robertsons' claims.

We reverse and remand for further proceedings.

_____

WE CONCUR:

_____        _____